Pat Krahenbuhl and Emma L. Krahenbuhl v. Commissioner.
Krahenbuhl v. Commissioner
Docket No. 5010-66.
United States Tax Court
T.C. Memo 1968-34; 1968 Tax Ct. Memo LEXIS 263; 27 T.C.M. (CCH) 155; T.C.M. (RIA) 68034; February 27, 1968. Filed Jack Keyes, 720 N. 18th, Bessemer, Ala., for the petitioners. Robert D. Hoffman, for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined the following deficiencies in income tax against petitioners: Taxable Year Ended
Amount
12/31/63
$1,034.28
12/31/64
271.34
The question for decision is whether the Commissioner properly increased the unreported income of petitioner, Pat Krahenbuhl, by the amounts of $4,269.56 for 1963 and $1,116.47 for 1964 by reallocating to him all the undistributed taxable income of a subchapter S corporation to reflect the value of his services in accordance with section 1375(c) of the 1954 Code. Findings of Fact Some of the facts are stipulated. The stipulated facts are incorporated herein by reference. Pat and Emma L. Krahenbuhl, husband and wife (sometimes hereinafter referred to as petitioners), reside *265 in Bessemer, Alabama, and resided there at the date the petition in this case was filed. Mid-Alabama Electric, Inc., a corporation (sometimes hereinafter referred to as the "corporation"), was organized under the laws of the State of Alabama on January 2, 1963. Five thousand shares of common stock were authorized, issued and outstanding on the date of incorporation, which shares were subscribed to, issued to and held by the following persons on the date of incorporation as follows: Pat Krahenbuhl
2,501 shares
Thurman L. Durham
1 share
Emma D. Krahenbuhl 2,498 shares
Total
5,000 Thurman L. Durham held one "qualifying" share so that the corporation could comply with Alabama law. After incorporation was completed such share was transferred to Emma D. Krahenbuhl (Emma L. Krahenbuhl is the same person as Emma D. Krahenbuhl). Mid-Alabama Electric, Inc., is a U.S. small business corporation as defined in subchapter S of the Internal Revenue Code of 1954, and elected not to be taxed as a corporation under Code section 1372. The shareholders properly consented to such election. On January 3, 1963, Emma D. Krahenbuhl transferred to herself as custodian under the *266 Uniform Gift to Minors Act, 624 shares for each of her four children. These children and their dates of birth are shown below: Suzanne M. Krahenbuhl
August 28, 1951
Patrick W. Krahenbuhl
August 17, 1953
Melanie R. Krahenbuhl
August 28, 1954
Melissa K. Krahenbuhl
March 22, 1956 All these gifts were properly made under the Alabama Uniform Gift to Minors Act, sections 154(1) through 154(10), Title 47, Alabama Code 1958. Social Security cards have been issued to each of these children. Pat is a graduate electrical engineer and a master electrician. For about six years prior to the formation of Mid-Alabama Electric, Inc., he was employed by Canterbury Electric Company, which was in the electrical contracting business. He performed such duties as sales engineer, a semioffice manager, prepared bids on jobs, and handled the work and followed through on such jobs to a conclusion. In addition to working for Canterbury Electric Company, he also taught in the public school systems in Bessemer and Birmingham, Alabama. After the formation of Mid-Alabama Electric, Inc., he 156 served as president during the years 1963 and 1964, and his duties were similar to those he *267 had performed while working for Canterbury Electric Company. Mid-Alabama Electric, Inc., is in the electrical contracting business, i.e., installing electrical conduits and fixtures and doing electrical planning for others, and has been since its organization on January 2, 1963. Pat has been the guiding influence and main spring of this business. For the first four or five months after the formation of this corporation he worked 14 to 16 hours a day for the corporation. He submitted all bids on all jobs, outlined the work of all employees, supervised all jobs, and purchased all the materials. The corporation hired approximately 20 persons in the conduct of its business during 1963 and 1964. However, for the first three or four months of 1963 the petitioners were the only employees of the corporation. The corporation operates on a fiscal year basis. It filed its U.S. Small Business Corporation Return of Income, Form 1120-S, with the district director, Birmingham, Alabama, for the period January 2 - Decemeber 1, 1963, and for the fiscal year ending November 30, 1964. These returns disclosed taxable income of $8,552.79 for 1963 and $2,236.51 for 1964. The Forms 1120-S filed by *268 Mid-Alabama Electric, Inc., disclose payments of salary to Pat Krahenbuhl of $36.36 for the fiscal period ended December 1, 1963, and $4,800 for the fiscal year ended November 30, 1964. However, the corporation paid Pat Krahenbuhl a salary of $4,800 for the fiscal period ended December 1, 1963, and $7,200 for the fiscal year ended November 30, 1964. Emma L. Krahenbuhl performed some services for the corporation during both years. She received no salary for the fiscal period ended December 1, 1963, and a salary of $4,800 for the fiscal year ended November 30, 1964. The corporation operated with a minimum of equipment, mostly used. The depreciable assets had a depreciated cost of $1,738.88 at the end of the corporation's first fiscal year and $1,354.07 at the end of its second fiscal year. To help meet expenses Pat loaned the corporation $4,000 in 1963 which was repaid the following year. The four children of petitioners filed Federal income tax returns, Form 1040, for the calendar years 1963 and 1964 and included as income in such returns their share of the undistributed taxable income of the corporation. No cash or other property was paid by the corporation to the children or *269 to the custodian of their stock. However, payments of the income tax due on the returns filed by the children were made by the corporation. Petitioners' minor children performed no service for Mid-Alabama Electric, Inc., other than occasionally answering the extension to the office telephone located in petitioners' home when no one else was available to do so. Pat Krahenbuhl, as an employee of others, earned between $9,000 and $10,000 a year prior to the incorporation of Mid-Alabama Electric, Inc., including about $1,500 as a schoolteacher. A savings account was opened for three of the four children with Mrs. Pat Krahenbuhl being named co-owner on the following dates: Name
Date
Initial Deposit
Patrick W. Krahenbuhl
6/ 4/64
$ 5.00
Suzanne M. Krahenbuhl
9/24/64
15,50
Melissa Krahenbuhl
12/18/64
5.00 The source of these deposits is not disclosed by the record. No further deposits were made to these accounts during the years here in issue except to that of Patrick W. Krahenbuhl, whose account had a balance at the end of 1964 of $21.50. Apparently an application for an account in the name of Melanie Rose Krahenbuhl was made but the record fails to disclose *270 that this account was ever established. The tax savings to the Krahenbuhl family as a result of forming Mid-Alabama Electric, Inc., and gifts of stock to the children totaled $1,021.62 for the taxable years 1963 and 1964. This tax savings is measured by the amount of the deficiency disclosed in the statutory notice less the income tax paid with the children's returns computed as follows (computation ignores a relatively minor adjustment to medical expense deduction resulting solely from petitioners' increased income): Deficiency 1963
$1,034.28
Deficiency 1964 271.34
Total deficiency
$1,305.62
Less:
Tax reported by the four children in 1963
284.00
Tax reported by the four children in 1964 -0-
Tax savings
$1,021.62 157 The Commissioner allocated all of the taxable income of Mid-Alabama Electric, Inc., for the fiscal years ended December 1, 1963 and November 30, 1964 to petitioners, apparently, in accordance with section 1375(c), Internal Revenue Code of 1954. [1] These adjustments were explained in the statement accompanying the deficiency notice as follows: [1963] (a) It is determined that you realized ordinary income, *271 other than salary, from the tax-option corporation, Mid-Alabama Electric, Inc., in the amount of $8,552.70 rather than $4,283.23 reported on your return. Therefore, taxable income is increased by the difference of $4,269.56, as shown below: Reported
Deter- mined
Increase
Pat Krahenbuhl
$4,278.11
$8,547.67
$4,269.56
Emma D. Kra- henbuhl 5.12
5.12
-0-
Totals
$4,283.23
$8,552.79
$4,269.56 * * *
[1964] (a) It is determined that you realized ordinary income, other than salary, from the tax-option corporation, Mid-Alabama Electric, Inc., in the amount of $2,236.551 rather than $1,120.06 reported on your return. Therefore, taxable income is increased by the difference of $1,116.45. Ultimate Finding The value of services rendered to the corporation by Pat was $7,200 in each taxable year. Opinion Here the Commissioner has not argued, as he did in Henry D. Duarte, 44 T.C. 193, that the transfers of stock to the minor children had no economic reality or that petitioners were the true economic owners of all the stock in Mid-Alabama Electric, Inc., during the taxable years. Though unexplained in the deficiency notice, the Commissioner apparently bases his allocation of all of the distributable income of the corporation to Pat on section 1375(c), Internal Revenue Code of 1954, quoted in footnote 1, and Regs., sec. 1.1375-3 [2] interpreting the Code. Thus we come to the second question which was posed but unanswered in Duarte, i.e., should an increased portion of the taxable income of the corporation be allocated to Pat in order to reflect the value of his services in accordance with section 1375(c)? *272 The corporation paid Pat a salary of $4,800 for *273 fiscal year 1963 and $7,200 for fiscal year 1964. This compensation, according to petitioners' argument, was fair and reasonable. By reallocating the undistributed taxable income of the corporation all to Pat, as representing the value of his services, the effect of the Commissioner's action is that Pat's compensation for 1963 is increased to $13,352.79 for 1963 and $9,436.51 for 1964. The regulations quoted in footnote 2 state that in valuing services rendered by a shareholder, consideration shall be given to all the facts and circumstances of the business, including managerial responsibilities, and the amount that would ordinarily be paid in order to obtain comparable services from a person not having an interest in the corporation. The task of the Commissioner in protecting the revenue under section 1375(c) apparently acquires a different emphasis from 158 the responsibility which he has under section 162(a)(1) for determining a reasonable allowance for salaries or compensation for services. Here the emphasis is on keeping salaries up to a reasonable limit; under section 162(a)(1) it is on keeping salaries down to a reasonable figure. There is, however, no shifting of the *274 burden of proof from petitioners to the Commissioner and the burden to show error in the Commissioner's determination is still on the petitioners. The record here is not the most satisfactory we have ever considered, but in the exercise of our best judgment we have found that the value of Pat's services to the corporation was $7,200 in each of the years before us. That figure was arrived at by giving what we consider to be appropriate weight to the following factors among other record facts: that the corporation was in its infancy and without experience at the beginning in the setting of salaries or the expectation of profits; that Pat was competent and had previously earned about $7,500 per year as an employee of another electrical contracting firm; that he, in effect, was the whole corporate "show"; and that there was no scheme or intent to avoid taxes other than might be inherent and allowable in forming a subchapter S corporation. While our finding does not adopt in full the position of either party we think it is fair and justifiable. To reflect necessary adjustments, Decision will be entered under Rule 50. Footnotes
1. SEC. 1375(c) Treatment of Family Groups. - Any dividend received by a shareholder from an electing small business corporation (including any amount treated as a dividend under section 1373(b)) may be apportioned or allocated by the Secretary or his delegate between or among shareholders of such corporation who are members of such shareholder's family (as defined in section 704(e)(3)), if he determines that such apportionment or allocation is necessary in order to reflect the value of services rendered to the corporation by such shareholders. * * * ↩
Reported
Determined
Increase (Decrease)
Pat Krahenbuhl
$ 1,118.70
$2,235.17
$1,116.47
Emma L. Krahenbuhl 1.36
1.34
(.02)
Totals
$1,120.06
$2,236.51
$1,116.45
2. Sec. 1.1375-3 Treatment of family groups. - (a) In general. Pursuant to section 1375(c), any dividend received by a shareholder from an electing small business corporation (including any amount treated as a dividend under section 1373(b)) may be apportioned or allocated by the district director between or among shareholders of such corporation who are members of such shareholder's family, if he determines that such apportionment or allocation is necessary in order to reflect the value of services rendered to the corporation by such shareholders. In determining the value of services rendered by a shareholder, consideration shall be given to all the facts and circumstances of the business, including the managerial responsibilities of the shareholder, and the amount that would ordinarily be paid in order to obtain comparable services from a person not having an interest in the corporation. The taxable income of the corporation shall be neither increased nor decreased because of the reallocation of dividends under section 1375(c)↩. The amount reallocated shall be considered a dividend to the shareholder to whom it is reallocated.